# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Angela Hansen,<br><br>    Plaintiff,<br><br>vs.<br><br>David E. Reich, et al.,<br><br>    Defendants. | **REPORT AND RECOMMENDATION RE 1915(e)(2) SCREENING AND ORDER STAYING FURTHER ACTION PENDING CONSIDERATION OF THIS REPORT AND RECOMMENDATION**<br><br>Case No. 1-17-cv-55 |

Plaintiff Angela Hansen ("Hansen"), acting pro se, initiated this action on March 31, 2017, against individuals working in the North Dakota state courts and law enforcement, ranging from justices on the North Dakota Supreme Court to state district court judges to North Dakota attorneys and to North Dakota state court administrative staff, amongst others. (Doc. Nos. 1, 10, 11). What follows is the undersigned's review pursuant to 28 U.S.C. § 1915(e)(2).

**I.   BACKGROUND**

This action stems from various state court actions involving the divorce of Hansen and defendant Shannon Dieterle. The North Dakota Supreme Court outlined the circumstances giving rise to this action in Dieterle v. Dieterle, 2016 ND 36, 875 N.W.2d 479 and Dieterle v. Dieterle, 2013 ND 71, 830 N.W.2d 571. Generally, the state district court divided the marital assets, awarded Hansen temporary spousal support, and awarded Shannon Dieterle custody of the couple's daughter. The state district court subsequently held Hansen in contempt of court for failing to abide by its orders. On the two appeals, the North Dakota Supreme Court affirmed the division of marital property, the spousal support award, the custody determination, and the finding of contempt.

Following closure of the state court proceedings, Hansen initiated this action on March 31,

2017. (Doc. No. 1).[1]  Before any of the defendants answered, Hansen filed a First Amended Complaint (Doc. No. 10) and a Second Amended Complaint (Doc. No. 11). In the Second Amended Complaint, Hansen alleges the defendants, both individually and in concert, violated constitutional, federal, and state law in various state court proceedings.  Hansen alleges these violations resulted in deprivation of her property, both personal and real, and her parental rights.  Hansen's Second Amended Complaint contains fourteen claims arising under federal and state law for: (1) violation of 18 U.S.C. § 1962(c); (2) conspiracy to violate 18 U.S.C. § 1962(c); (3) fraud; (4) kidnaping under N.D.C.C. § 12.1-18 and hostage taking under 18 U.S.C. § 1203; (5) trespass to chattels; (6) unjust enrichment; (7) civil conspiracy; (8) violations of North Dakota Canons of Judicial Conduct; (9) declaratory judgment; (10) fraudulent conversion; (11) intentional infliction of emotional distress; (12) violations of 42 U.S.C. §§ 1981, 1982, 1983, 1985; (13) breach of fiduciary duty; and (14) aiding and abetting.  In her prayer for relief, Hansen seeks monetary damages, a declaration that the various state court judgments are invalid, an injunction against enforcement of the state court judgments, and other miscellaneous relief.

## II. DISCUSSION

Notwithstanding any paid filing fee, 28 U.S.C. § 1915(e)(2) provides "the court shall dismiss the case at any time if the court determines that . . . the action (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." This § 1915(e)(2) screening, and the authority to dismiss claims arising

---

[1] Prior to initiating the current action, Hansen brought a similar action in the federal district court for Colorado. See Hansen v. Reich et al., Case No 1:16-cv-02469 (D.Colo.). The federal court there dismissed the case for improper venue and refused to transfer the case, concluding transfer was not in the interests of justice because Hansen's complaint did not comply with Fed.R.Civ.P. 8. (Doc. No. 13). In dismissing the case, the court also noted it was under no obligation to transfer a meritless case doomed for failure in the transferee court.

thereunder, includes non-prisoner pro se complaints. Key v. Does, 217 F. Supp. 3d 1006, 1007 (W.D. Ark. 2016). With regard to frivolousness under § 1915(e)(2)(i), "the Supreme Court explained that an action is frivolous if 'it lacks an arguable basis either in law or in fact.'" Aziz v. Burrows, 976 F.2d 1158, 1159 (8th Cir. 1992) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). "An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right." Williamson v. Corizon, Inc., No. 1:15CV220, 2016 WL 5933982 at *1 (E.D. Mo. October 12, 2016). A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678-84 (2009) ("Iqbal").

In applying § 1915(e)(2), the court must give the pro se complaint the benefit of a liberal construction. See, e.g., Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008); Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015) ("When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.") (internal quotation marks omitted). This does not mean, however, that the pro se litigant is excused from satisfying the plausibility standard established in Twombly and further amplified by the Supreme Court in Iqbal. See Story v. Foote, 782 F.3d 968, 969 (8th Cir. 2015).

A. Fed. R. Civ. P. 8 failure

As an initial matter, Hansen's Second Amended Complaint does not comply with Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1) (emphasis added). The purpose of this short and plain statement is to provide defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 545.

Hansen's Second Amended Complaint (Doc. No. 11) is a 169-page document containing nearly 50,000 words and over a thousand paragraphs, all of which set forth fourteen causes of action ranging from RICO violations to kidnaping to fraudulent conversion. The shotgun style of Hansen's complaint does not provide the defendants with fair notice of the nature of Hansen's claim. All fourteen of the claims include language realleging and incorporating the thousand-plus preceding paragraphs as to all of the defendants, save claims four, eight, and thirteen exempting certain defendants. Through this pleading, it is virtually impossible to know which allegations are intended to support which claims, let alone how those allegations relate to the individual defendants included within those claims. Many of the allegations, the vast majority of which are nothing more than unsubstantiated legal conclusions, have little to do with the specifics of a given claim, leaving the court and the litigants to sift through the thousand-plus paragraphs and guess which are material to a particular claim. This is not in keeping with the purposes behind Fed. R. Civ. P. 8.

B. <u>Hansen fails to state a claim for which relief can be granted</u>

More fundamentally, Hansen's claims are also patently baseless - if not outright frivolous. At their core, Hansen's claims allege the defendants committed unlawful acts by: (1) advocating a position adverse to Hansen in the state court proceedings; (2) making a decision adverse to Hansen in the state court proceedings; (3) enforcing a decision adverse to Hansen stemming from the state court proceedings; and/or (4) failing to heed Hansen's demands regarding the state court

proceedings. Setting aside the immunity enjoyed by the vast majority of the defendants,[2] these are not sufficient bases for civil liability under any reasonable legal theory. Although Hansen countless times alleges the defendants acted in cahoots so as to constitute racketeering and fraud, alleging these conclusions over and over does not make them so when there is no factual or legal basis. The same can be said with the countless other allegations of wrongdoing contained within Hansen's pleadings.

In addition, Hansen lacks standing for the claims in which she seeks to enforce criminal statutes and ethics codes, as is the case in claims four, seven, eight, thirteen, and fourteen. See, e.g., Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); Parkhurst v. Tabor, 569 F.3d 861, 865–67 (8th Cir.2009) (crime victims lack standing to compel a criminal prosecution); Jones v. Clinton, 206 F.3d 811, 812 (8th Cir. 2000) (a private party lacks standing to prosecute an action for criminal contempt ); Smith v. Shaw, No. 5:09–01001, 2012 WL 1832340, at * 1 (S.D. W.Va. April 25, 2012); Herr v. Cornhusker Farms, Case No. 1-15-cv-174, 2017 WL 1149072 at *16 (D.N.D. March 27, 2017) (not allowing privatized enforcement of ethical rules).

In short, despite being voluminous and verbose, Hansen's complaint does not state any set of facts that, if assumed to be true, would state a plausible claim for relief against any of the defendants. That being the case, the court should not allow this action to go forward when it serves

---

[2] The majority of the defendants sued in this action are members of the North Dakota judiciary or their administrative staffs. Also included are the North Dakota Attorney General and multiple states' attorneys. These defendants have absolute immunity when acting within the scope of their judicial or prosecutorial duties or when assisting in the carrying out of judicial functions. See, e.g., Mireles v. Waco, 502 U.S. 9, 11 (1991) (judicial immunity); Imbler v. Pachtman, 424 U.S. 409, 431(1976) (prosecutorial immunity); Penn v. United States, 335 F.3d 786, 789 (8th Cir. 2003) (absolute immunity extends "to other officials for acts taken pursuant to a facially valid court order"); Robinson v. Freeze, 15 F.3d 107, 109 (8th Cir. 1994) (judicial immunity extends to individuals carrying out the judiciary's functioning). For most, if not all, of these defendants, Hansen has failed to pled facts that state a claim to which the absolute immunity of these defendants would not apply.

no purpose other than to harass the currently named defendants and others.[3]

  C.  Lack of subject matter jurisdiction

Finally, there is another even more fundamental problem. Assuming that the defects in Hansen's pleadings could be rectified by way of another amended complaint, this court lacks subject matter jurisdiction to entertain this suit at all because of the limited authority of federal courts to revisit state court proceedings, particularly with respect to state court determinations on family law.

  1.  *Rooker-Feldman Doctrine and the Domestic Relations Exception*

Under the Rooker-Feldman doctrine, lower federal courts lack subject matter jurisdiction over challenges to state court judgments, a review limited to the province of the United States Supreme Court. Keene Corp. v. Cass, 908 F.2d 293, 296 (8th Cir. 1990) (noting "[f]ederal courts, with the exception of the United States Supreme Court, do not possess appellate jurisdiction over state court proceedings."). This doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, (2005). These types of suits are "out of bounds" in

---

[3] Documents submitted to the court by the various defendants make clear that Hansen is using this action to harass members of the North Dakota legal community. Without the court's leave, and without any authority to do so, Hansen served civil investigative demands on some of the defendants demanding sensitive personal and financial information that has no bearing on this litigation. (Doc. No. 31-1). Further, in an attempt to get the defendants to capitulate, the demands, without any basis, falsely state it would be a crime to avoid compliance. Upon multiple motions from the defendants, the court already had to quash these demands as improper. (Doc. No. 50).

In addition, the harassment extends to individuals and entities who have not been properly added as defendants in this action. In documents submitted to the court, Hansen appears to have altered the issued summonses by handwriting in additional defendants who are not named in her Second Amended Complaint. (Doc. Nos. 49-1; 49-2; 56-2). Hansen has not sought leave from the court to file any further complaint adding these individuals and entities as parties to this action. Additionally, the altered summonses are not consistent with one another, with some individuals being listed in one summons but not the other, and vice versa. These handwritten summonses have left some of these individuals and entities confused as to whether they are a part of this action and has led to multiple motions to dismiss. (Doc. Nos. 47, 51, 55, 58).

federal court and warrant dismissal "for want of subject-matter jurisdiction." Id. at 283-84. The doctrine not only precludes direct assailments of state court judgments, but also prohibits collateral attacks by way of federal claims inextricably intertwined with the state court judgments. Prince v. Arkansas Bd. of Examiners in Psychology, 380 F.3d 337, 341 (8th Cir. 2004). Federal claims are inextricably intertwined "with the state court judgment if they succeed only to the extent that the state court wrongly decided the issue before it." Id. (internal quotations and alterations omitted). This prevents federal courts from considering actions that would "directly nullify the final judgment of the state court." Id. (internal alterations and quotations omitted). The type of relief sought may be indicative of whether a federal claim is simply an attempt to disturb the state court judgment. Id.

More particular to family law matters, federal courts have developed what has come to be known as the domestic relations exception. The "domestic relations exception, first articulated in Barber v. Barber, 62 U.S. (1 How.) 582, 584, 16 L.Ed. 226 (1859), divests the federal courts of jurisdiction over any action for which the subject is a divorce, allowance of alimony, or child custody." Kahn v. Kahn, 21 F.3d 859, 861 (8th Cir. 1994). "[W]hen a cause of action closely relates to but does not precisely fit into the contours of an action for divorce, alimony or child custody, federal courts generally will abstain from exercising jurisdiction." Id. This doctrine precludes federal suit involving "a remedy which is essentially domestic—where, in addressing the same conduct involved in a state domestic proceeding, the effect of a remedy in the federal suit is to modify, nullify, or predetermine the domestic ruling of the state proceeding." Wallace v. Wallace, 736 F.3d 764, 767 (8th Cir. 2013). No matter how styled, the domestic relations exception disallows domestic claims "cloaked in the 'trappings' of another type of" a federal claim. Mandel v. Town of Orleans, 326 F.3d 267, 271 (1st Cir. 2003) (quoting Congleton v. Holy Cross Child Placement

Agency, Inc., 919 F.2d 1077, 1078–79 (5th Cir.1990)).

2.  *Hansen's Claims*

Most of Hansen's claims relate, in one way or another, to alleged violations of due process that she contends occurred in the state court proceedings and entitle her to relief here, both monetary and injunctive. These claims offend the Rooker-Feldman doctrine and the domestic relations exception because they can succeed only to the extent the state courts wrongly decided the various issues and because any relief this court may provide would essentially nullify or modify the state court judgments.

Hansen's ninth claim is illustrative as well as the most offensive in this regard. This claim seeks a declaratory judgment from this court declaring the state court judgment "unenforceable and non-recognizable pursuant to the Declaratory [J]udgment Act, 28 U.S.C. § 2201(a), and any use of such court orders must cease immediately." (Doc. No. 11 p. 146). According to Hansen, the state court judgments are unenforceable under various state and federal laws because of "fraud, failure to afford procedures compatible with due process, lack of impartial tribunals, lack of personal jurisdiction, contravention of public policy, that the judgment conflicts with proper due process of law, and that the judgment is an unenforceable penalty." (Doc. No. 11 p. 146). To support this claim, Hansen alleges the state district court judges presiding over the hearings were biased against her and this bias gives rise to a claim for due process violations.[4] As evidence, she cites the state

---
[4] Although not verbatim, this claim tracks other arguments Hansen made to the North Dakota Supreme Court. See Brief of Appellant, Dieterle v. Dieterle, No. 20150087 (N.D. August 17, 2015) ("The Order was void due to the fraud, perjury and Unclean Hands of the Plaintiff by which the Prior Order was obtained under and was on Appeal" and that "The Judge acted in ways of obvious bias, by his denial of a full and fair hearing to the Defendant."); see also Petition for Rehearing, Dieterle v. Dieterle, No. 20150087 (N.D. March 3, 2016) ("Judge Reich's individual actions in this matter, fall under violation to U.S.C title 42, section 1983 as does wrongful action taken by the Supreme Court to attempt to exceed its Jurisdiction and try to validate what Ms. Hansen has already proven to be void by lack of due process, fraud upon the court, and abuse of discretion." and that a "judgment is invalid when it is based on fraudulent

courts' various legal conclusions. For instance, Hansen alleges the state court showed bias "by applying only two of the thirteen best interest factors." (Doc. No. 11 p. 50). Hansen, quoting from an unidentified source, further alleges a "due process violation occurs when a state-required breakup of a natural family is founded solely on a 'best interests' analysis that is not supported by the requisite proof of parental unfitness." (Doc. No. 11 p. 59). These are just some of the alleged legal errors Hansen alleges amount to bias against her.[5] In addition to legal conclusions, Hansen alleges the presiding judges exhibited bias towards her with their factual conclusions, specifically by refusing "to consider her or her children credible." (Doc. No. 11 p. 50). Expounding, Hansen alleges "the lower court ignored the evidence actually received . . . a lower court's decision is supposed to be made based on facts and not the recitation of bald faced lies and innuendo." (Doc. No. 11 pp. 58-59). In a different iteration, Hansen alleges the state courts "intentionally, knowingly, and willfully failed to interpret the facts fairly," all of which evidenced bias (Doc. No. 11 p. 50).

Although Hansen attempts to characterize this claim as one of due process, the claim is little more than a thinly veiled attempt to have this court sit in review of the factual and legal conclusions reached in the state court proceedings. Hansen's bias claim principally, if not entirely, rests on allegations the state courts wrongly decided the various issues and these erroneous decisions evidenced bias, which Hansen then parlays into a due process claim. To vindicate Hansen's claim

---

misrepresentation of facts."). The North Dakota Supreme Court rejected these arguments. Dieterle, 2016 ND 36 at ¶ 20 (concluding "[w]e have considered Hansen's remaining claims, and we conclude they are without merit or unnecessary to our decision.").

[5] Hansen also argues the state courts erred, in part, by delegating their decision making authority to a parental coordinator. (Doc. No. 11 p. 49) (alleging, not "only did Jorgensen incorrectly delegate a judicial duty to a parenting investigator, he also inappropriately delegates the creation of a parenting plan to a parenting coordinator . . . this also proves the bias of Jorgensen against Hansen."). The North Dakota Supreme Court rejected this argument. Dieterle, 2013 ND 71 at ¶ 16 (concluding the "court's order is not an impermissible delegation of authority to the parenting coordinator."). This is just another attempt by Hansen to use the cloaking of "bias" as pretense to have this court sit in review of a state court family law decision.

by finding bias, the court would necessarily have to revisit the record and conclude the state courts wrongly applied North Dakota law and wrongly decided factual issues. Not only does such vindication fall within the second-guessing prohibited by the Rooker-Feldman doctrine, it also offends the domestic relations doctrine by addressing the same conduct involved in a state domestic proceeding to modify or nullify the state court judgments.[6] The same problems exist with respect to claims one, two, three, five, seven, eight, twelve, thirteen, and fourteen, all of which to varying degrees allege the state courts wrongly decided issues under the guise of due process claims.

In the end, Hansen is a disappointed state court litigant pursuing claims that, at bottom, are nothing more than an invitation for this court to sit in appellate review of the state court judgment in contravention of the Rooker-Feldman doctrine, which limited her right to any federal review to a direct appeal to the United States Supreme Court, and that, in any event, are barred from consideration here by the domestic relations exception. Hansen's Second Amended Complaint should be dismissed because of lack of subject matter jurisdiction for these reasons.

### III. RECOMMENDATION

For the reasons expressed above, and pursuant to the initial screening allowed for under 28 U.S.C. § 1915(e)(2), the undersigned **RECOMMENDS** that the above action be **DISMISSED WITHOUT PREJUDICE** for (1) failure to comply with Fed. R. Civ. P. 8, (2) failure to state a claim upon which relief can be granted, and (3) want of subject matter jurisdiction, and that all

---

[6] Hansen's intent to use this litigation as a vehicle to seek relief from the state court judgment and obtain custody of the minor child is all the more apparent when considered in light of what she styled as "Complaint and Request for Injunction." (Doc. No. 10). In the requested relief, Hansen stated she "requests and is entitled to, and should be awarded, a preliminary injunction awarding her immediate custody of her youngest daughter . . . ." (Doc No. 10 p. 15). Hansen goes on to cite N.D.C.C. ch. 14-09, which contains the best interest factors used to determine child custody, for why her ex-husband should not have custody of their child. (Doc. No. 10 pp. 16-17). These admissions make clear that Hansen seeks a domestic remedy in this case by acquiring custody of her child from defendant Shannon Dieterle. This court's jurisdiction does not include readdressing child custody issues.

pending motions (Doc. Nos. 46, 47, 51, 54, 55, 57, 58) be deemed **MOOT.**

IV. <u>**ORDER**</u>

Pending the court's consideration of this Report and Recommendation, it is **HEREBY ORDERED** that further action in this case is **STAYED** and all deadlines, except for the deadline for filing objections to this Report and Recommendation, are suspended. This includes deadlines for responses to any pending motions.

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to these recommendations within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 10th day of October, 2017.

<u>/s/ Charles S. Miller, Jr.</u>
Charles S. Miller, Jr.
United States Magistrate Judge